UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| STEVEN SZCZYGIEL | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:19-cv-311-JD |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
|     Defendant. | ) | |

## OPINION AND ORDER

Steven Szczygiel applied for social security disability insurance benefits and supplemental security income, alleging that he is unable to work primarily due to a heart attack, triple bypass open heart surgery, heart disease, neuropathy, and bronchitis. The Administrative Law Judge ("ALJ") found that Mr. Szczygiel retained the capacity to perform work at the light exertional level and therefore denied the benefits. For the reasons set forth below, the Court remands this case for further proceedings.

### I. FACTUAL BACKGROUND

Mr. Szczygiel filed an initial claim for disability on April 25, 2016 with an alleged onset date of November 15, 2015. (R. 66). He claimed to be disabled due to a heart attack, triple bypass open heart surgery, and bronchitis. *Id.* Mr. Szczygiel later amended his onset date to May 1, 2016. (R. 210). On March 28, 2018, Mr. Szczygiel participated in a hearing, with representation, before an ALJ. The ALJ issued an unfavorable decision denying his disability benefits and concluded that Mr. Szczygiel was not disabled under the Social Security Act because he had the residual functional capacity ("RFC") that allowed him to perform work in the national economy. On June 28, 2019, the Appeals Council denied Mr. Szczygiel's request for

review, after which he filed this appeal. Mr. Szczygiel seeks review of the Commissioner's decision, thereby invoking this court's jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Mr. Szczygiel has had a history of cardiovascular issues and he has struggled with chest tightness, chest pain, and soreness in his legs before his alleged onset date. He had several jobs before his onset date, and he complained to his treating physician that he "stopped working because he could not 'keep up.'" (R. 233, 298). In February 2015, a cardiac catheterization showed that Mr. Szczygiel's left circumflex coronary artery was "subtotally occluded in the midportion" and his right coronary artery "appeared to be chronically occluded proximately." (R. 360). In March 2015, Mr. Szczygiel underwent a coronary bypass grafting surgery. (R. 313). He was later diagnosed with cervical osteoarthritis, discogenic disc syndrome, and neuropathy. (R. 706, 871). Since his alleged onset date, Mr. Szczygiel occasionally has had spasms, tenderness, pain, radiculopathy, and/or limited range of motion in his cervical spine. (R. 799, 822, 826, 842, 875, 878, 882). He sometimes displayed left shoulder rotator cuff syndrome, which causes him limited range of motion, rotator cuff tear, tenderness, and aches in his left shoulder. (R. 882, 890, 893).

At the hearing in front of the ALJ, Mr. Szczygiel and a vocational expert ("VE") testified. Mr. Szczygiel testified that he can only sit approximately "an hour at a time," after which he will "get [lower] back pain" and his legs "start to go a little numb." (R. 39). He can stand "maybe half-an-hour," after which he will feel "[n]umbness and tingling in the legs, and pain in the back." *Id.* He testified that he has to "put [his] feet up" at least a half-an-hour to an hour to relieve the pain. (R. 39-40). He also testified he can walk approximately a block before he has to catch his breath. (R. 40). He attributed his shortness of breath to his cardiac condition. (R. 42). Mr. Szczygiel further testified that he can lift and carry at most five pounds. (R. 35, 40). His

hands get tired easily and his arms are not as flexible as they used to be. (R. 41). He testified that he does not believe he can work because his back, leg, and feet "are killing [him]," when he comes home from his current part-time job, as a delivery driver. (R. 38).

Mr. Szczygiel also testified that his physical therapy failed to relieve the pain and made things worse. (R. 42). He had to get injections in his back or neck to relieve the pain. (R. 42). However, the injections were only helpful for the first two or three days. Mr. Szczygiel testified that he no longer does exercise because the pain in the feet and the legs stopped him from doing so. (R. 47).

With respect to daily living, Mr. Szczygiel testified that he experiences a lot of pain when he tries to put on his belt, to reach around, and to bend over to tie his shoes. (R. 40-41). He has a hard time "washing [his] hair, trying to raise [his] arm up above shoulder level," and he "could not get [his] arm up." (R. 43). He shares the responsibilities of household chores with his wife. (R. 41). He testified that he has to sit down and put his feet up for another half-hour after a ten-minute dish washing, because he starts getting pain in his feet and between his shoulder blades. (R. 43-45). He also testified that he can only clean the house for fifteen or twenty minutes at a time and takes a break. (R. 44). He further testified that he cannot spend too much time grocery shopping due to pain and he has to make different trips to the store. *Id.*

The ALJ posed five hypothetical questions to the VE during the hearing, each one including different limitations. In the decision, the ALJ assigned the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform work at the light exertional level with: occasionally lifting and carrying 20 pounds; frequently lifting and carrying 10 pounds; standing and walking for six hours of an eight-hour workday; sitting for six hours of an eight hour workday; occasionally climbing ramps and stairs; occasionally climbing ladders, ropes, and scaffolds; occasionally balancing, stooping, kneeling, crouching, and crawling; avoiding concentrated exposure to cold, wetness, hazards such as moving mechanical parts and unprotected heights;

>avoiding even moderate exposure to unprotected heights; avoiding wet/slippery surfaces; occasional overhead reaching bilaterally; and frequent operation of foot controls bilaterally.

(R. 13). Based on the testimony of the VE and the assigned RFC, the ALJ found Mr. Szczygiel capable of working in the national economy.

## II. STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line

of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III. STANDARD FOR DISABILITY

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the community.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity,

which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## IV.  DISCUSSION

Mr. Szczygiel has offered three arguments in support of remand. He argues that 1) the ALJ erred in evaluating the opinion of Mr. Szczygiel's treating physician, Mark T. Nootens, M.D.; 2) the ALJ did not evaluate Mr. Szczygiel's RFC in accordance with SSR 96-8P, and 3) the ALJ did not evaluate Mr. Szczygiel's allegations in accordance with SSR 16-3P. The Court only addresses the first argument, as the Court agrees that the ALJ erred in evaluating the opinion of the Plaintiff's treating physician, therefore requiring remand. The Court need not address the remaining arguments, which can be addressed by the parties on remand.

The opinion of a treating physician on the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011).[1] "An ALJ must offer good reasons for discounting the opinion of a treating physician." *Israel v.*

---

[1] The Commissioner has since rescinded the treating physician rule, so it applies only to claims filed before March 27, 2017. *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018). Mr. Szczygiel filed his disability claim in 2016.

*Colvin*, 840 F.3d 432, 437 (7th Cir. 2016) (citing *Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014)). If the ALJ does not give the treating physician's opinion controlling weight, the ALJ applies the factors set forth in 20 C.F.R. § 404.1527(c)(1)-(6) to determine the weight to give the opinion. *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014). These factors are: the examining relationship; the treatment relationship; the degree to which the source presents relevant evidence to support the opinion; the consistency of the source's opinion with the other evidence; whether the source specializes in an area related to the individual's impairment; and any other factors tending to support or refute the opinion. *See* 20 C.F.R. § 404.1527(c). If the ALJ discounts the treating physician's opinion after considering these factors, the Court must give deference to the ALJ's decision so long as he "minimally articulate[d] his reasons." *Elder*, 529 F.3d at 415 (internal quotations omitted).

  Dr. Nootens is a cardiologist and Mr. Szczygiel's treating physician. Dr. Nootens treated Mr. Szczygiel on numerous occasions from February 13, 2015 through September 7, 2017. (R. 298, 305, 307, 634, 639, 643, 647, 649, 653, 660, 736). In his opinion, Dr. Nootens opined that Mr. Szczygiel cannot walk more than two blocks and he frequently experiences pain or other symptoms severe enough to interfere with the attention and concentration needed to perform even simple work tasks. (R. 634). Dr. Nootens also opined that Mr. Szczygiel can sit two hours at one time, stand two hours at one time, and stand or walk about two hours in an eight-hour working day with normal breaks. (R. 634-35). Dr. Nootens noted that Mr. Szczygiel needs a job that permits shifting position at will from sitting, standing or walking, and needs to take unscheduled breaks during a working day. (R. 635). He further opined that Mr. Szczygiel can rarely lift and carry 20 pounds, occasionally lift 10 pounds, and frequently lift and carry more than five but less than 10 pounds. *Id.* Finally, Dr. Nootens noted that Mr. Szczygiel is likely to be

absent from work more than four days per month as a result of the impairments or treatment. (R. 636).

To begin with, in assigning Dr. Nootens' opinion "little weight," the ALJ failed to engage in the required analysis mandated by 20 C.F.R. § 404.1527(c). As noted above, if the ALJ does not give the treating physician's opinion controlling weight, the ALJ is required to consider the length, nature, extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion. Here, the only basis supporting the ALJ's conclusion is that Dr. Nootens' opinion is "simply not supported by the objective evidence in the record, including his own treatment notes." (R. 15). This is not enough. Although the ALJ explicitly mentioned that Dr. Nootens was Mr. Szczygiel's treating physician, the ALJ failed to note the specialization of Dr. Nootens and failed to recognize how long Dr. Nootens has been treating Mr. Szczygiel, which was quite regularly for two and a half years. Without noting Dr. Nootens specialty and the length of the treating relationship, the Court cannot determine how these factors impacted her analysis. Nor did the ALJ explain the frequency of examination and the types of tests performed. The only factor that the ALJ mentioned as support for her conclusion is the consistency of the opinion with the record. It is not apparent that the ALJ considered any of these factors. The Commissioner argues that the ALJ's consideration of these factors was implicit since she discussed Mr. Szczygiel's health condition. [DE 14 at 7]. However, the Seventh Circuit holds that "the ALJ [is] required to explicitly consider the details of the treatment relationship and explain the weight [s]he [gave] the opinion." *See Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016). These considerations may lead to a different conclusion than the one reached by the ALJ when assigning Dr. Nootens' opinion with little weight. The ALJ's consideration and

8

explanation of the weight given to Dr. Nootens' opinion is inadequate and therefore requires remand.

In addition, the Seventh Circuit demands the ALJ create a "logical bridge" between the evidence in the record and the ALJ's conclusion. *Terry*, 580 F.3d at 475. The evidence specific to Dr. Nootens' opinion that the ALJ identified in her decision was that the "claimant has consistently had normal cardiovascular and respiratory examinations," and "[Mr. Szczygiel] has often demonstrated normal strength and normal gait." The ALJ found the abovementioned evidence inconsistent with Dr. Nootens' overall opinion. This Court is not persuaded by the ALJ's reasoning because she did not create the necessary logical bridge.

The ALJ's main logical error is that she ignored the substantial evidence in the record that reported otherwise without articulating good reasons for doing so. While the Court recognizes that the ALJ need not discuss every piece of evidence in the record when rendering her decision, the ALJ must not "cherry-pick" evidence supporting a finding of non-disability while ignoring evidence that points to the contrary. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). For example, the consultative examination report provided by Dr. Soraj Arora, M.D. noted that Mr. Szczygiel has experienced "weakness/numbness in right arm, weakness/numbness in leg, numbness/tingling, loss of limb use." (R. 697). Dr. Arora also diagnosed Mr. Szczygiel with "coronary atherosclerosis" and "atherosclerotic heart disease of native coronary artery without angina pectoris." (R. 699). Moreover, Dr. Samer Kassar, M.D., from Midwest Neurology recorded that "[Mr. Szczygiel's] [d]eep tendon reflexes are absent" and "[s]ensation is decreased [in] legs." (R. 705). Dr. Kassar also found that Mr. Szczygiel has experienced pain in both legs, foot, and back, prescribing medication for the pain, as well as numbness and myocardial infraction. (R. 706). In addition, hospital records provided by Franciscan Health

9

showed that Mr. Szczygiel has experienced chronic left shoulder pain and left cervical radiculopathy. (R. 794, 804, 810). It also noted Mr. Szczygiel's decreased range of motion, tenderness, and pain in left shoulder. (R. 803, 814). In January 2017, after reporting to the emergency room with neck pain radiating down his shoulder, an x-ray of his left shoulder showed degenerative changes at the AC joint and subchondral sclerosis. (R. 774, 776, 796). Two MRIs in 2017 showed the left shoulder had prominent arthritic change of the AC joint and articular surface tearing of the supraspinatus tendon and the cervical spine showed multilevel degenerative spinal stenosis with preferential foraminal stenosis. (R. 824, 828). Further, the ALJ does not explain how Dr. Nootens' "treatment notes" are inconsistent with his medical opinion. Throughout the two and half year treating relationship, Dr. Nootens has performed medical procedures on Mr. Szczygiel, including a coronary bypass grafting surgery (R. 313) and a cardiac catheterization which showed severe three-vessel coronary artery disease, a sequential graft, and the left anterior descending coronary artery had 70 percent stenosis. (R. 307). Not only do these reports, opinions, and objective medical evidence show that the ALJ cherry-picked certain portions of the record to use in support of her decision, but she also failed to articulate good reason for finding the record inconsistent with Dr. Nootens' medical opinion.

In her decision, the ALJ failed to present sufficient explanation in assigning little weight to Dr. Nootens' opinion. She spent most of the paragraph citing treatment notes that Mr. Szczygiel has normal strength and normal gait. In light of other contrary evidence, the ALJ never attempted to explain why normal strength and gait can discount Dr. Nootens' overall opinion. The ALJ made a problematic assumption which equates physical strength and gait to cardiovascular well-being with the capacity to work. Thus, the ALJ was impermissibly "playing doctor," because the ALJ's decision simply indicates that since Mr. Szczygiel often had normal

examination findings, he could not suffer from further limitations. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). Additionally, the ALJ stated that Mr. Szczygiel's ability to engage in a part-time job is inconsistent with Dr. Nootens' opinion. However, the ability to work part-time, particularly with difficulty as is the case here, does not support a finding that an individual could perform work full-time. *See Larson v. Astrue*, 615 F.3d 744, 752 (7th Cir. 2010) ("There is a significant difference between being able to work a few hours a week and having the capacity to work full time"). Mr. Szczygiel testified that he is a delivery driver and is scheduled to work six hours per day, three days per week. (R. 36). He explained that he spent most of the time sitting in the restaurant waiting for a delivery order and would only work for two of his scheduled days. *Id.* Mr. Szczygiel testified that after he finished a shift, he had severe back, leg, and foot pain. (R. 38). The ALJ failed to discuss how Dr. Nootens' opined limitations were inconsistent with Mr. Szczygiel's part-time work and how it was actually performed. *See Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) (finding remand was required, in part because the ability to work a "six-hour day only occasionally" does not support a finding that an individual could sustain full-time work). Therefore, to the extent that the ALJ relied on Dr. Nootens' treating notes and examination findings and Mr. Szczygiel's part-time work to determine that there is an inconsistency of Dr. Nootens' overall opinion, she failed to satisfactorily explain her reasoning and support her analysis with the necessary "logical bridge." This flawed analysis warrants remand.

In its response, the Commissioner cited Mr. Szczygiel's subjective feeling—he feels well, he feels fine—to supplement the ALJ's conclusion. (R. 639, R. 736, R. 740). However, the Commissioner's argument is unhelpful. First, the Commissioner, again, adopted a cherry-picking

11

approach in defending the ALJ's decision. For example, in Exhibit 5F, the Commissioner cited the Office Treatment Records that Mr. Szczygiel feels well. (R. 639). However, on the same line, Dr. Nootens also noted that Mr. Szczygiel's legs are still aching. *Id.* Second, it remains doubtful that Mr. Szczygiel's statements of "feeling well" or "feels fine" present a precise picture of his overall condition. A person with long term disease and undertakes continuous treatment with medication is reasonably to have better days and worse days. A hopeful statement such as "doing well" does not necessarily indicate a diagnosis which is inconsistent with claimant's overall findings. *See Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008) (finding that the statement that a patient was "doing quite well" was insufficient to accord little weight to the treating physician's opinion); *Kinder v. Berryhill*, No. 4:16-CV-076-JVB-PRC, 2018 WL 4627226, at * 2. (N.D. Ind. Sept. 26, 2018) (finding that the patient's assessment of doing well or doing okay are meant to be measures of patient's wellness relative to his disease's prognosis not a statement of overall health). Relying on Mr. Szczygiel's statements to supplement the finding of inconsistency is overly simplified and far from satisfactory.

Lastly, the ALJ assigned "great weight" to the opinions of the State agency medical consultants because their opinions were "based on their particular and detailed knowledge of the standard of disability as set forth by the Commissioner." (R. 15). However, the existence of a contradictory agency consultant opinion alone is insufficient to overcome the opinion of a treating physician. *See Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) (finding that the contrary opinion of a nonexamining physician, by itself, does not constitute substantial evidence to reject a treating or examining physician's opinion). The ALJ also reasoned that their opinions were "generally consistent with the record as a whole," but failed to provide any further discussion of how they were consistent, nor did she cite to any exhibit supporting her conclusion

of consistency. (R. 15). Since the ALJ failed to address and explain why the agency consultant opinions warranted greater weight than Mr. Szczygiel's treating physician, the ALJ's finding was not supported by substantial evidence and therefore requires remand.

Because the ALJ failed to properly weigh the medical opinion evidence of Mr. Szczygiel's treating physician, and because the ALJ did not adequately explain her conclusion, harmful error occurred, and remand is therefore required. The Court recognizes that the RFC is a legal determination made by the ALJ, not a medical determination. However, the ALJ must justify her decision based on the record evidence by evaluating both the evidence favoring the claimant as well as the evidence favoring the claimant's denial and may not ignore an entire line of evidence contrary to her findings. *Zurawski*, 245 F.3d at 887–88. Thus, the ALJ's decision cannot stand since it lacks substantial evidentiary support and an adequate discussion of the issues. *See Lopez*, 336 F.3d at 539.

## V. CONCLUSION

For those reasons, the Court REVERSES the Commissioner's decision and REMANDS for additional proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: June 23, 2020

                                            /s/ JON E. DEGUILIO
                                          Chief Judge
                                          United States District Court